```
                UNITED STATES DISTRICT COURT

                SOUTHERN DISTRICT OF TEXAS

                    HOUSTON DIVISION

ZRS7, LLC,                      .    CASE NO. 4:23-CV-0491
                                .
          PLAINTIFF,            .
                                .
     V.                         .    HOUSTON, TEXAS
                                .    THURSDAY, APRIL 13, 2023
TAILWIND AIR, LLC,              .    01:57 P.M. TO 03:18 P.M.
                                .
          DEFENDANT.            .
. . . . . . . . . . . . . . . . .


                     MOTION HEARING

             BEFORE THE HONORABLE PETER BRAY
             UNITED STATES MAGISTRATE JUDGE



        APPEARANCES:                  SEE NEXT PAGE

        ELECTRONIC RECORDING OFFICER: JACQUELINE MATA

        OFFICIAL INTERPRETER:         NONE PRESENT

        CASE MANAGER:                 JASON MARCHAND


             TRANSCRIPTION SERVICE BY:


           Trinity Transcription Services
                 1081 Main Street
               Surgoinsville, TN 37873
                  281-782-0802
                battshott@aol.com




Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| ZRS7, LLC, | . | CASE NO. 4:23-CV-0491 |
| | . | |
| PLAINTIFF, | . | |
| | . | |
| V. | . | HOUSTON, TEXAS |
| | . | THURSDAY, APRIL 13, 2023 |
| TAILWIND AIR, LLC, | . | 01:57 P.M. TO 03:18 P.M. |
| | . | |
| DEFENDANT. | . | |

. . . . . . . . . . . . . . . . .

MOTION HEARING

BEFORE THE HONORABLE PETER BRAY
UNITED STATES MAGISTRATE JUDGE

Appearances:

The PLAINTIFF:                    DANIEL J. KASPRZAK, ESQ.
                                  MAX WAGNER, ESQ.
                                  Johnson DeLuca Kurisky &
                                    Gould, PC
                                  1221 Lamar Street, Suite 1000
                                  Houston, TX 77010

The DEFENDANT:                    BRANDON S. WINCHESTER, ESQ.
                                  ADAM GRINER, ESQ.
                                  Schiffer Odom Hicks Johnson PLLC
                                  700 Louisiana, Suite 2650
                                  Houston, TX 77002

Transcriber:                      Cheryl Battaglia
                                  Trinity Transcription Services
                                  1081 Main Street
                                  Surgoinsville, TN 37873
                                  281-782-0802

1

1       **Houston, Texas; Thursday, April 13, 2022; 01:57 p.m.**

2           **THE COURT:**  Welcome everyone.

3           We're here on -- first, please, be seated.

4           We're here on *ZRS7, LLC versus Tailwind Air.*  Who's

5  here for the Plaintiff?

6           **MR. WAGNER:**  Max Wagner for the Plaintiff, your

7  Honor.

8           **THE COURT:**  How do I spell your last name?

9           **MR. WAGNER:**  Wagner, W-a-g-n-e-r.

10          **THE COURT:**  Are you on the docket sheet in this case?

11          **MR. WAGNER:**  Yeah.  I'm -- I'm second chairing.  Dan

12  Kasprzak is on his way up right now.

13          **THE COURT:**  Do you want me to wait for him?

14          **MR. WAGNER:**  I would appreciate that.

15          **THE COURT:**  Oh, okay.  I thought we were ready.

16          **MR. WAGNER:**  Sorry about that, your Honor.

17          **THE COURT:**  No, that's all right.

18          But we'll -- we'll wait for him.  Go ahead and

19  announce your appearance then for the Defendant.

20          **MR. WINCHESTER:**  Sure, your Honor.  Brandon

21  Winchester for the Defendant and third-party Plaintiff,

22  Tailwind Air, LLC.

23      **(Pause in the proceeding.)**

24          **THE COURT:**  And what's your name, sir?

25          **MR. GRINER:**  Adam Griner.

2

1          **THE COURT:**  All right.  Let's give Mr. Kasprzak a

2     second.

3          **MR. WAGNER:**  Sure.

4          **THE COURT:**  Does he know which courtroom we're in?

5          **MR. WAGNER:**  I believe he does.  Yes.

6       **(Pause in the proceeding.)**

7          **THE COURT:**  I think we -- I can ask you this basic

8     question, though.

9          Cassels is the -- what is he?  Not the Plaintiff, but

10    what's his position?

11         **MR. WAGNER:**  He's the General Manager of ZRS7?

12         **THE COURT:**  Is he going to consent to me as well?

13         **MR. WAGNER:**  Yes, I believe he is.

14         **THE COURT:**  Cause if not, we have to quit right here.

15    Cause I can't do this.  If not everybody consents, then it has

16    to go back to Judge Tipton.

17         **MR. WAGNER:**  Yes.  Yes, he will.

18         **THE COURT:**  That's going to happen, Okay.

19         **MR. WAGNER:**  Yeah.

20         **THE COURT:**  Then we'll go forward on that basis.  If

21    something changes, you'll tell me.

22         You want to go out in the hall and see if you can

23    lead Mr. Kasprzak this way in case he's --

24         **MR. WAGNER:**  I'll go --

25         **THE COURT:**  -- he's like not remembering which

**TRINITY TRANSCRIPTION SERVICES**

3

1    courtroom we're in.

2         **MR. WAGNER:**  I'll try to go find him, your Honor.

3         **THE COURT:**  Thank you.

4         **(Court confers off the record.)**

5      **(Recess taken from 1:59 p.m. to 2:17 p.m.)**

6         **MR. KASPRZAK:**  Beg the Court's indulgence.  I thought

7    the hearing was at 2:30.

8      **(Pause in the proceeding.)**

9      **(Voices speaking off the record.)**

10        **THE COURT:**  Be seated.

11     **(Pause in the proceeding.)**

12        **THE COURT:**  All right.  Let's just start over.  Let's

13   start over with appearances.

14        This is *ZRS7, LLC versus Tailwind Air* and recently

15   added but not answered is Troy Cassels.  Who's here for

16   Plaintiff?

17        **MR. KASPRZAK:**  Your Honor, for Plaintiff of ZRS7, LLC

18   Dan Kasprzak and Max, what's your last name?

19        **MR. WAGNER:**  Wagner.

20        **MR. KASPRZAK:**  Max Wagner with from Johnson DeLuca

21   Kurisky & Gould.

22        **THE COURT:**  Thank you.

23        And for the Defendant?

24        **MR. WINCHESTER:**  Yes, your Honor.  Brandon

25   Winchester, Adam Griner from Shiffer Hicks Johnson for the

4

1  Defendant, Tailwind Air, LLC.

2          **THE COURT:**  Thank you.

3          And my understanding from Mr. Wagner before you came

4  in, Mr. Kasprzak, is that when he does get into the case,

5  Mr. Cassels intends to consent to me.  Is that correct?

6          **MR. KASPRZAK:**  That will be a yes.  That's --

7          **THE COURT:**  To my jurisdiction?

8          **MR. KASPRZAK:**  He's -- he's authorized me to accept

9  service.  But we haven't even met with him individually to work

10  out -- that'll be yeah.  We -- we will not have a problem with

11  him consenting to --

12          **THE COURT:**  All right.

13          **MR. KASPRZAK:**  -- to you serving.

14          **THE COURT:**  So that's fine.  And everybody can be

15  seated if you want.  That's fine.  Just pull the microphone

16  closer.

17          We have a number of students from South Texas College

18  of Law here today who are trying to observe a hearing, and

19  understand it, and write a paper.  And if you all don't help me

20  out, I've read everything.

21          But can you just give me a brief rundown,

22  Mr. Kasprzak, of the case for them so they can write a paper?

23          **MR. KASPRZAK:**  Yeah.  That -- that was -- well this

24  case is convoluted enough that that was my intention in the

25  first place to the hearing.

5

1          And first I want to thank the Court's indulgence for

2    being late.

3          **THE COURT:**  You're fine.

4          **MR. KASPRZAK:**  Some --

5          **THE COURT:**  I understand.

6          **MR. KASPRZAK:**  Somehow, I put this down at 2:30.

7          First lesson today, always be 15 minutes early if not

8    half an hour early for the hearing.  I was 15 minutes late, but

9    I had the wrong time, or 15 minutes early, but I had the wrong

10   time on my calendar.  I apologize.

11         Secondly, I would love to read your papers, cause

12   maybe it will shed some light, some insight, into this case.

13         What we have here, Judge, is a very unique business

14   situation that is seeking a solution.  And I -- I want to

15   explain what my intentions, or what my client's intentions,

16   were initially when we filed the -- the -- the complaint and

17   the motion for the writ of sequestration.

18         We thought long and hard.  We researched prior to

19   filing this.  And decided rather than file it in State Court

20   and deal with the issue of having to domesticate that writ of

21   sequestration in the state of New York, we would file it in

22   Federal Court, because we couldn't find anything in the case

23   law that said that this Court didn't have jurisdiction over a

24   piece of channel property anywhere in the continental United

25   States.

6

1          And I applaud opposing counsel in finding the -- the

2   one case he did.  I went back to see what was --

3          **THE COURT:**  I found another one, too, you know.

4          **MR. KASPRZAK:**  Another -- another --

5          **THE COURT:**  There were two.

6          **MR. KASPRZAK:**  Two cases under -- yes.

7          **THE COURT:**  Maybe you all cited them.  I don't know.

8          But there's two cases that say, so a -- for you guys,

9   the bay -- what we're -- what's going on here is there's an

10  airplane that's in a hangar in New York, right?  And I'll -- so

11  if I get this wrong, you tell me.

12         The airplane belongs to the Plaintiff, right?

13  They -- it fully belongs to them, correct?

14         **MR. WINCHESTER:**  Yeah.  Yeah.  But we have some

15  technical things --

16         **THE COURT:**  Okay.

17         **MR. WINCHESTER:**  -- we'll bring up, but yes.

18         **THE COURT:**  That's fine.

19         **MR. WINCHESTER:**  Yeah.

20         **THE COURT:**  It belongs to the Plaintiff.  And the

21  Plaintiff was leasing it to the Defendant, so that the

22  Defendant could, you know, what -- what's the word for --

23         **MR. WINCHESTER:**  Charter.

24         **THE COURT:**  -- charter it, thank you.  Charter it out

25  and make money.  And the Plaintiff, that was one contract.  And

7

1    then another contract was that the Plaintiff's officer,

2    Mr. Cassels, would pay money to keep the plane maintained and

3    flight worthy.

4             And didn't work out.  And so now both sides think the

5    other side owes them money.

6             **MR. KASPRZAK:**  There -- there's a bona fide dispute

7    over the balances due between Mr. Cassels, who's just recently

8    been added as a third-party Defendant to this case, and

9    Tailwind Air, which is the singular entity that LRS -- ZRS7

10   leased the airplane to.  They managed it and operated it on

11   behalf of ZRS Air and sent the bills to Mr. Cassels

12   individually.

13            **THE COURT:**  All right.

14            So that having been said, there is pending before me

15   a Motion for a Temporary Restraining Order.  And my first

16   question for both of you is what exactly, because I don't think

17   you agree on what you're seeking.

18            Tell me exactly what the order is that you are

19   wanting me to enter with this.  I actually think this is a

20   temporary restraining order situation.  Because the suit was

21   filed like two months ago.  There was not a -- a -- there was a

22   request for a writ of sequestration.  There wasn't a request

23   for a temporary restraining order.

24            Temporary restraining order only lasts for 14 days

25   anyway.  It's designed to kind of maintain the status quo.

8

1   It'd only be issued if, among other things, I find that there's

2   a eminent risk of injury that can't be satisfied by damages

3   claim.

4         I think more what this is really is a request for a

5   preliminary injunction, which would last throughout the suit.

6   I know that you've styled it as a TRO.  But, I mean, 14 days

7   has kind of come and -- and gone.

8         Whatever it is, it's either under 65(a) or 65(b).

9   What is it that you want me put into an order from the

10  Plaintiff's side?

11        **MR. KASPRZAK:**  Well what we're seeking, Judge, is

12  a -- a -- we're -- we're not seeking the mandatory restraining

13  order of having them deliver the plane to this jurisdiction.

14        **THE COURT:**  Well that's good.  Because I'm not going

15  to order that.

16        **MR. KASPRZAK:**  Right.

17        **THE COURT:**  Because I can't.

18        **MR. KASPRZAK:**  What -- what -- what we're seeking is

19  non-mandatory relief of them not interfering with the owner

20  when we send our pilot and our mechanic to New York to take

21  possession of the aircraft.

22        It should have been delivered to us on January 9th,

23  but it wasn't.  And now we have the issue of what do we do?

24  They are using the fact that it needs new tires and is not

25  quote/unquote "airworthy" as a --

9

1              **THE COURT:**  Well the -- I mean, let's not -- let's

2    not characterize how they're using it.  Just that's --

3              **MR. KASPRZAK:**  Yes.

4              **THE COURT:**  That's their position.

5              **MR. KASPRZAK:**  That's the reason --

6              **THE COURT:**  It is what it is.

7              **MR. KASPRZAK:**  That's the reason why they can't fly

8    it up here or give it to us if we go down there to get it.

9              **THE COURT:**  Okay.  So, with the clarification, cause

10   there's some --  probably some not meeting of the minds is a

11   bad word in a contract case.  But --

12             **MR. KASPRZAK:**  Yes.

13             **THE COURT:**  But there's a little talking passed each

14   on what they were looking for.

15             There's no way that I'm going to enter an order right

16   now that says you have to fix the plane, inspect it, get a

17   pilot and send it up.  I don't -- I'm not going to do that.

18             **MR. KASPRZAK:**  Sure.

19             **THE COURT:**  And I don't think that they've satisfied

20   any burden for me to order that, nor does it appear that

21   they're asking for that.

22             But it being their plane, and if the -- this being a

23   fight over who owes how much to whom, sort of literally it's

24   just -- we're going to do an accounting inside this case at

25   some point.  We're going to --

1          **MR. KASPRZAK:**  Sure.

2          **THE COURT:**  Right?

3          **MR. KASPRZAK:**  Right.

4          **THE COURT:**  What would be your objection to simply

5    standing down?  Take your plane, and immediately insure it and

6    take responsibility for it, by the way?

7          **MR. WINCHESTER:**  Sure.  That's a -- that's a good

8    question, your Honor.

9          And -- and I guess my first point would be, you asked

10   at the beginning of the hearing, okay it's their plane, right?

11   And I said yes.  But there's some technicalities to that.

12         And the -- the technicalities to that are, there is

13   hundreds of thousands of parts on that plane that Tailwind has

14   paid for that they have not remunerated us for.  So, that is a

15   practical issue that we would have to deal with.

16         So -- and why I bring that up, is it -- should you

17   order, okay.  They can send a pilot out.  They can send a

18   mechanic out.  That guy could come out and do whatever he needs

19   to do.  Are we going to be afforded the opportunity to strip

20   all of our parts off of it?  The stuff that they haven't paid

21   for?

22         **THE COURT:**  But -- see, here's the thing.

23         That -- that is what you're saying.  But you don't

24   have and I -- I don't mean to get ahead of my skis here.  But

25   you agreed to do certain work on their plane.  You did the

11

1    work.

2              **MR. WINCHESTER:**  Uh-huh.

3              **THE COURT:**  It's not paid for in your view.

4              **MR. WINCHESTER:**  Right.

5              **THE COURT:**  Okay.  Fine.

6              But I don't have any understanding that there's been

7    any kind of lien filed, like a mechanics lien.  I don't know

8    what's available in New York --

9              **MR. WINCHESTER:**  Right.

10             **THE COURT:**  -- like it would be here.

11             I don't understand that you have any other kind of

12   lien.  I don't understand that you filed anything inside this

13   case to establish that you've got a possessory interest in the

14   plane.

15             It just so happens that it's in your shop or your

16   hangar, I mean.

17             **MR. WINCHESTER:**  Correct.

18             **THE COURT:**  Right?

19             And so, two -- either one of two things has got to

20   happen here.  And I was trying to see if I could provoke a

21   solution.

22             This is ultimately a damages case.  And I get it that

23   your client is, in your view, losing money every day.  But that

24   happens all the time.

25             **MR. KASPRZAK:**  Certainly.

1          **THE COURT:**  And we can calculate that.

2          And if you -- if you win a damages award. Then in

3    order to collect on that, part of it, if the plane is still up

4    there, part of it is go get the plane.

5          **MR. WINCHESTER:**  Uh-huh.

6          **THE COURT:**  But right now you don't have anything in

7    this lawsuit that tells me that you -- you're telling me now --

8          **MR. WINCHESTER:**  Uh-huh.

9          **THE COURT:**  -- what about my parts?  But that's not

10   inside of anything that you filed.

11         **MR. WINCHESTER:**  We -- we have it in our declaration

12   that was Exhibit C to our response.

13         **THE COURT:**  Okay.  But that's not part of a -- an

14   operative pleading that -- I mean, is there a lien somewhere?

15         **MR. WINCHESTER:**  There's not a lien somewhere, your

16   Honor.  I can't keep --

17         **THE COURT:**  Okay.  So there's no -- there's no

18   possessory interest in the plane yet.

19         **MR. WINCHESTER:**  Right.

20         **THE COURT:**  And what I'm trying to figure out is,

21   whether, as a group of really smart lawyers, we can't just

22   figure out a way to mitigate the damages that they say they're

23   suffering.

24         **MR. WINCHESTER:**  Uh-huh.

25         **THE COURT:**  Let them take the plane, let them fix the

1    plane.  You have an accounting of the parts that you've put in

2    there that aren't paid for yet.  They can -- they can charter

3    the plane out and get back to making money instead of having it

4    tick on what they believe is their damages claim.

5         **MR. WINCHESTER:**  Uh-huh.

6         **THE COURT:**  Why can't that just happen?  Why can't we

7    just do that?

8         **MR. WINCHESTER:**  I -- I mean, your Honor, practically

9    speaking.  Again, our parts there, everything like that,

10   there's also a host of regulatory concerns that our client's

11   concerned about.

12        The plane is currently on their air carrier

13   certificate with the FAA.  And there's a whole slew of

14   regulations that I started reading through about, you know, our

15   client has to maintain records, maintenance, so that there's an

16   end-to-end system or, I guess, trail of -- of maintenance and

17   repairs with no gap in it.

18        And if they were to come out and take the plane, that

19   would cause issues because the FAA at any time can come out to

20   our client and ask to see all their records.  And if they're

21   going to take the aircraft documents, which is part of what

22   they're asking you to order them to be able to grab, that's

23   going to have some of those records there.

24        And that could potentially have long-term

25   ramifications for our client when it comes to the FAA and

14

1    they're business-wide.

2            **THE COURT:**  Right.

3            **MR. KASPRZAK:**  Your Honor, may I?

4            **THE COURT:**  Yeah.  Yeah.

5            **MR. KASPRZAK:**  The aircraft documents are also

6    property of the Plaintiff.  And the one thing that's very, very

7    clear in the lease agreement is upon termination, they are to

8    surrender the aircraft and the aircraft documents to the

9    Plaintiff.

10           **THE COURT:**  All right.  So you --

11           **MR. KASPRZAK:**  The fact that --

12           **THE COURT:**  I got you.

13           **MR. KASPRZAK:**  -- six months from now the FAA might

14   want to see a copy of the receipt for the fuel senders unit

15   that was installed in December, 2021.  That -- that's what copy

16   machines are for, I guess.

17           **THE COURT:**  But let me just interrupt.

18           Because -- because here's -- here's the thing.

19   When -- when you look at the -- the elements for what I -- I'm

20   considering this to be a preliminary injunction really.

21           Right now, keeping the plane in their possession does

22   nothing more than tick your damages model up, right?

23           **MR. KASPRZAK:**  Correct.

24           **THE COURT:**  And what I think you all need to do.  And

25   because you're -- you're both telling me from both sides a

15

1  whole lot of things that are not really fleshed out at this

2  point, right?

3         I mean FAA regulations that aren't -- that aren't

4  described to me anywhere.  You know, a number of parts that are

5  in the plane over which you think you might have some sort of

6  possessory interest or a lien, but there's no lien that's been

7  perfected at this point.

8         I don't even know what rule of law would allow that,

9  it's probably in New York something similar to, you know, what

10  we have here when, you know, you don't pay your mechanic, or --

11  or the guy who fixes your air conditioner and those things.  I

12  just don't know what's up there.

13         And so, we've got a lot of unknowns.  Would you have

14  any objection, then, from me right now ordering that you all

15  simply maintain the plane in its hangar in its current state

16  without, you know, keep it insured as you are.

17         Cause you keep telling me in your -- in your

18  papers --

19         **MR. WINCHESTER:**  Right.

20         **THE COURT:**  -- nothing's going to happen to the

21  plane.  It's fine.

22         **MR. WINCHESTER:**  Right.

23      **(Pause in the proceeding.)**

24         **THE COURT:**  The status quo then is that the plane is

25  in your hangar.  Leave it there.  But you're -- what if I

16

1  ordered you to maintain that status quo.  Meaning, don't take

2  it apart.

3         **MR. WINCHESTER:**  Right.

4         **THE COURT:**  Don't injure it.  Don't hurt it.  Cover

5  it from the elements.

6         **MR. WINCHESTER:**  Right.

7         **THE COURT:**  Right?

8         And then, why don't we do some discovery on a -- I

9  mean, what we can do is just combine a preliminary injunction

10 hearing with -- with a trial and just be done with it.  It's

11 not that complicated, is it?

12        **MR. WINCHESTER:**  Right.

13        **THE COURT:**  It's not.  I mean --

14        **MR. WINCHESTER:**  No, your Honor.  No, it's not.

15        I think it at bottom, this is just a payment dispute.

16 And you said it initially, it's -- this is a damages case.

17        **THE COURT:**  And the faster we get it done, the sooner

18 you all can have your plane back.

19        Whether they pay you something or you pay them

20 something, you know, were going to -- we're going to work that

21 out.

22        **MR. KASPRZAK:**  That's it.

23        **THE COURT:**  But I'm afraid to enter an order that

24 somehow starts violating FAA rules.  And I don't have that

25 briefed is my point.

17

1          **MR. KASPRZAK:**  The Plaintiff has the same obligation,

2    where they take the plane back from Tailwind is they had before

3    they gave the plane to Tailwind.

4          **THE COURT:**  No.  No.  I hear you.

5          **MR. KASPRZAK:**  We were operating it in compliance

6    with FAA.

7          **THE COURT:**  This is all argument, though.

8          **MR. KASPRZAK:**  The pilot we're sending to pick it up

9    is the person who was making sure we were in compliance with

10   FAA rules before we signed the lease with Tailwind.

11         **THE COURT:**  I hear you, but you're -- this is a lot

12   of argument about things that aren't briefed, that aren't ripe

13   for me to decide.

14         **MR. KASPRZAK:**  All of the financial issues are

15   between Tailwind and Troy Cassel.

16         The lease provisions are very clear.  It is very

17   clean.  And under the lease, and for the rights of ZRS7, I

18   thought we should have just filed a -- a Motion for Summary

19   Judgment.  Because I -- there's not an issue that can be raised

20   that keeps -- that will establish that Tailwinds not the

21   unencumbered owner of that plane and is entitled to possession.

22         And I don't know of anywhere in this world where you

23   have this much difficulty obtaining your property after you've

24   leased it to a third-party for a term of years, or a term of

25   months, and the lease terminates.

18

1          Whether --

2          **THE COURT:**  I mean, I might actually --

3          **MR. KASPRZAK:**  -- this way or not.

4          **THE COURT:**  I might -- I might tend to agree with you

5    on -- on that point.  Okay?

6          I don't -- but what I'm saying is, the current

7    situation is simply costing you money.  And I need for

8    Mr. Castles to get into --

9          **MR. KASPRZAK:**  Cassels.

10         **THE COURT:**  -- this case.

11         **MR. KASPRZAK:**  Yes.

12         **THE COURT:**  Cassel?  Sorry.

13         **MR. KASPRZAK:**  Well, and --

14         **THE COURT:**  Cassels.

15         **MR. KASPRZAK:**  -- you know, let me -- let me expound.

16         **THE COURT:**  And what I was going to say, though, he

17   needs to answer and be part of this case.

18         We need to probably have a couple depositions.  And

19   some exchange of documents.  Request for production and

20   interrogatories on an expedited bases and set this for a

21   preliminary injunction hearing where I have witnesses take the

22   stand and tell me the things that -- that they know.  And then

23   I can make an enlightened decision.

24         It's -- because in terms of a TRO, which is what's

25   before me right now, this -- this is not -- the elements aren't

19

1   met is what I'm saying.

2           I'm not saying you might not in a couple months make

3   the elements of a preliminary injunction.  But we need evidence

4   and discovery to do that is what I'm saying.

5           Do you vociferously object to that honestly?

6           **MR. KASPRZAK:**  I -- I do, your Honor.

7           Because the way the contract is -- is composed, the

8   way it was fashioned, the way it's supposed to work, is when

9   you look at the services agreement between Mr. Cassels and

10  Tailwind, it gives Mr. Cassels the right to dispute charges

11  that he receives from Tailwind.

12          And instead of filing a lawsuit in late -- in -- in

13  November of 2022, when he first contacted me and said I've got

14  a situation here I don't know what to do.  I'm leasing my plane

15  to this company that told me I would make money chartering it

16  once it got up-to-speed.

17          We're now up-to-speed.  And every month I get an

18  invoice that shows they're flying the plane more than they did

19  the previous month, but I'm losing more money the more they fly

20  it.  And I -- they're digging me a hole that I can't get out

21  of.

22          I read the agreement.  My first advice to him was,

23  have you considered the termination clause?  Cause there's a

24  clause in there that says that -- that the term of the services

25  agreement expires when the -- Tailwind no longer has a

1    leasehold interest in the plane.

2            So you have to look to the lease agreement.  And the

3    lease agreement very courteously provides a provision that says

4    that -- that ZRS7 may terminate this agreement any time,

5    without cause, on 30 days' notice.

6            And upon receipt of that notice, they'll have 30 days

7    to deliver the airplane and the -- and the documents to the

8    destination we designate in the continental United States.

9            **THE COURT:**  I don't disagree.  And --

10           **MR. KASPRZAK:**  And -- and --

11           **THE COURT:**  Wait.  Wait.  Wait.  Wait.  Wait.

12           **MR. KASPRZAK:**  There -- there's one more part you're

13   not hearing, Judge.

14           **THE COURT:**  Okay.

15           **MR. KASPRZAK:**  Yeah, you've probably -- you've

16   probably read this.  And I already realized this.  And I beg

17   the Court's indulgence.

18           But when you go back to the services agreement, it

19   says that Cassels has the right to dispute the charges.  He's

20   notified them that the charges are disputed.  Almost all of

21   them are disputed.  We've tried to give them many, many, many

22   specific examples of disputed charges that -- that total more

23   than $300,000.  Almost the whole amount is in dispute.

24           And in a separate provision in the service agreement,

25   Mr. Cassels has the right to conduct an audit.  They -- they

1  are required to give us access to all of the documents, which

2  by the way, should have been delivered to us on January 9th

3  with the aircraft, and then we conduct an audit.

4          And then -- and then there's the final provision,

5  some -- some genius drafted this, and it wasn't me.  I never

6  saw this agreement until -- until after it was all said and

7  done.

8          But some genius in New York put this provision in the

9  services agreement that says, none of these disputed charges

10 can be asserted against Mr. Cassels until the audit is

11 resolved.  And it's Mr. Cassels' intention, as I stated in my

12 initial demand letter to Tailwind, to -- that, you know, you're

13 in breach of the -- the lease agreement, so give us our plane.

14 And on the other front, we want to move forward with the audit.

15         And we want to resolve the audit.  And we sent

16 requests for -- for pertinent financial documents to the

17 attorneys for Tailwind.  And we haven't received any documents

18 yet.  But that audit, the whole contract is designed, so that

19 audit will resolve these things.

20         They have automatically assumed that Troy Cassels

21 just isn't going to pay them anything if the audit says he owes

22 us money.  I suspect it will probably say he owes them

23 something when the audit's done, between 0 and $441,000.  But

24 that's one huge range.

25         And -- and he has assured me that what that comes out

1   at he will pay, and this matter will be resolved.  There

2   doesn't need to be any long, drawn out lawsuit for over how

3   much is owed under the invoice.  Because the genius of the way

4   this is drafted, as you know from prior experience, is those

5   lawsuits and the depositions over the charges in those lawsuits

6   take hours and days.

7           Because you have to ask every person about the 17

8   invoices for parts that were applied to replace in October of

9   2021.  Okay.  Now let's talk about the 23 parts that were --

10          **THE COURT:**  Can I just interrupt --

11          **MR. KASPRZAK:**  -- replaced in October, 2022.

12          **THE COURT:**  -- please?  May I just?

13          **MR. KASPRZAK:**  Yes.

14          **THE COURT:**  Just let -- let me -- let me just bring

15  us back to where we are.

16          We are at the infancy of the case.  We've not even

17  had a joint discovery and case management plan.  We've not even

18  had a scheduling conference.  You're asking for a TRO.

19          The TRO is denied because, even based on what you're

20  telling me, it's all about the money for right now.  And if the

21  plane disappears off the face of this earth, they can pay you

22  for it.  And damages are accruing.

23          It's too early in the case to do this.  And so what

24  I'm going to do is allow you some expedited discovery.  We'll

25  set a preliminary injunction hearing at which you can present

1  relevant witnesses.  We'll do it fast.  We'll make a decision.

2          Or you all can just like do the math, and get the

3  plane back, and be done with this whole thing, by the way.  As

4  far as I'm concerned, I'm just -- I mean -- but this is -- this

5  is not appropriate for the place in the case that we are.

6          And that's not me telling you -- I'm not even going

7  to the success on the merits.  I'm not even -- I'm not even

8  there.  I'm just telling you that in terms -- you are asking

9  for a temporary restraining order.  And what -- but what I am

10 going to do, and I think there's no objection, is enter an

11 order that says you will maintain the plane such that its value

12 is not diminished.

13          Any objection to that?

14          **MR. WINCHESTER:**  No.  Not -- not a -- exactly, no,

15 your Honor.

16          The -- the only clarification we would ask from you

17 is what does maintain mean?  Does that mean continue to repair

18 and provide constant maintenance, or does it mean --

19          **THE COURT:**  We're going to -- this is, you know,

20 it -- it means, and I'm going to ask you all to prepare a

21 proposed order for me.

22          **MR. WINCHESTER:**  Okay.

23          **THE COURT:**  Okay?

24     **(Pause in the proceeding.)**

25          **THE COURT:**  That has -- I don't want the plane

24

1  sitting out in the sun -- where is it now?  It's inside of a

2  hangar?

3          **MR. WINCHESTER:**  That's my understanding, yes, your

4  Honor.

5          **THE COURT:**  Is it covered with -- with a cloth of

6  some kind and?

7          **MR. WINCHESTER:**  I -- I don't want to say either way.

8  I don't know, but I --

9          **THE COURT:**  I mean, is it --

10          **MR. WINCHESTER:**  I can find out.

11          **THE COURT:**  I -- I, you know, there's airplane

12  hangars and then there's airplane hangars.

13          **MR. WINCHESTER:**  Right.

14          **THE COURT:**  If they shoved it in the back and

15  they're, you know, using it, you know, to lean pieces of

16  equipment on --

17          **MR. WINCHESTER:**  Right.

18          **THE COURT:**  -- that would be unacceptable.

19          Well that needs to be maintained in a -- in a

20  standard way that inside of this industry people would

21  understand that you need to maintain the plane.  I think that

22  you can get with your -- your clients and find out some

23  language.

24          I don't want your plane getting destroyed.  And I

25  want -- I want to vette the arguments that you're making.  It

1  just can't be right now.  It's not -- we're just not at the --

2  that place.  We -- we need evidence.

3      What -- how long would it take to do what I think is

4  some pretty straightforward -- and what we're talking about is

5  a -- an injunction hearing on not the money.  We're not talking

6  about the accounting, right -- that you were referring to.

7  We're talking about what to do with the plane --

8      **MR. WINCHESTER:**  Uh-huh.

9      **THE COURT:**  -- pending trial.  Right?  Isn't that

10 what you're understanding?

11     **MR. WINCHESTER:**  Absolutely, your Honor.

12     **THE COURT:**  It's -- that's what we need to do.

13     **MR. WINCHESTER:**  Right.

14     **MR. KASPRZAK:**  Yes.

15     **THE COURT:**  What happens to the plane?

16     What do you believe we need to do to get ready for

17 such a hearing, absent you all like sitting in a room talking

18 about it.

19     **MR. WINCHESTER:**  Sure.  And -- and that's a -- an

20 issue that I want to bring up after the discovery discussion,

21 your Honor.

22     But -- but I guess the one issue, the one little

23 tweak here is that, as Mr. Kasprzak has made plainly clear,

24 there is Mr. Cassels out there.  And as you made clear, he

25 hasn't answered yet.

1          And so if -- if we're going to engage in those

2    preliminary discovery efforts, then either Mr. Cassels is going

3    to have to participate prior to answering, or we're going to

4    have to have something like that.  Because he's a --

5          **THE COURT:**  Well --

6          **MR. WINCHESTER:**  -- integral party to this.

7          **THE COURT:**  -- two -- I -- I -- I understand.  And

8    when is his answer due?

9          **MR. KASPRZAK:**  Oh, probably not until some time in

10   late May.  But I'll answer before that certainly.

11         **MR. WINCHESTER:**  And if you'll answer before that, I

12   don't have a problem.

13         **MR. KASPRZAK:**  I -- I can.  That's the next thing --

14         **THE COURT:**  Oh, did -- did you waive?

15         **MR. WINCHESTER:**  He waived, yes.

16         **MR. KASPRZAK:**  He waived.

17         **MR. WINCHESTER:**  I think the date is technically June

18   5th, I believe.

19         **MR. KASPRZAK:**  That might -- that might be correct.

20         **THE COURT:**  Okay.

21         Well the parties who are in the case have to step in.

22   So, we could -- we could set a -- a preliminary injunction

23   hearing some time in, give me, you know, we do need -- I mean,

24   these things do take some time.

25         **MR. WINCHESTER:**  Correct.

27

1          **THE COURT:**  August?

2       **(Pause in the proceeding.)**

3          **MR. KASPRZAK:**  There will be different lawyers

4   sitting in this chair if I go back with that news for my

5   client.

6          **THE COURT:**  Where are you going?

7          **MR. KASPRZAK:**  My client thinks I'm idiot because I

8   can't get his airplane for him, because he's read the contract.

9   And so --

10          **THE COURT:**  Okay.  But --

11          **MR. KASPRZAK:**  And he clearly understands all that

12   and explains it to me.  And he reminds me of them almost daily.

13          You can imagine the -- the personalities and stuff I

14   need to --

15          **THE COURT:**  And -- and I -- and I am not here to

16   manage personalities.

17          **MR. KASPRZAK:**  I -- I understand that.

18          **THE COURT:**  I fully appreciate what you're saying.

19          **MR. KASPRZAK:**  That's my problem, not yours, Judge.

20          **THE COURT:**  This is -- this -- because there is not

21   an eminent injury that cannot be compensated for by damages.

22   The Motion for Temporary Restraining order is denied.  So --

23          **MR. KASPRZAK:**  That's understood.

24          **THE COURT:**  All right.  Now a preliminary injunction

25   hearing is only about who owns the plane, and is there a

28

1  possessory interest that you have in the plane.  And can these

2  FAA issues not be solved.  And I just need to be briefed on

3  those things.  And there needs to be some evidence before me.

4         I don't know what it takes.  Help me out.  Help --

5  help the Court out.  Tell me what -- tell me when you can be

6  ready for that.  Maybe Mr. Cassels is not even in the case

7  until June.

8         **MR. WINCHESTER:**  Right.

9         **MR. KASPRZAK:**  Yeah.  He'll appear before that.

10         **THE COURT:**  But --

11         **MR. KASPRZAK:**  If that's a problem, he will appear

12  tomorrow.  And he --

13         **THE COURT:**  But he's not -- he's not here right now.

14         **MR. KASPRZAK:**  I just -- we want to cooperate as much

15  as we can with -- because we are --

16         **THE COURT:**  All right.

17         **MR. KASPRZAK:**  -- the ones who are suffering --

18         **THE COURT:**  Here's what we're going to do.

19         **MR. KASPRZAK:**  -- as this goes on.

20         **THE COURT:**  I'm going to walk out of this room.  And

21  you all talk about what you need to do.  How long you think

22  it's going to take you to do it.  And -- and I'll come back.

23  I'll be just in my office 3:30, 3:15?

24         **MR. WINCHESTER:**  Oh, okay.

25         **THE COURT:**  Propose me something.

29

1          **MR. WINCHESTER:**  Okay.

2          **THE COURT:**  Talk to me.  Talk to each other.

3          **MR. WINCHESTER:**  Sure.

4          **THE  COURT:**  Figure it out.  Tell me what you want to

5    do.  I'll make time in my schedule to do it.

6          I'm not trying to delay things --

7          **MR. KASPRZAK:**  No.

8          **THE COURT:**  -- unnecessarily.

9          But what -- what you want is a preliminary injunction

10   hearing.  And I'm going to give it to you.  So we just need

11   to -- we just need to get there.

12         I don't know what documents need to be exchanged.  I

13   don't know who needs to be deposed.  I don't know what

14   information needs to be in front of me.

15         **MR. KASPRZAK:**  The -- the --

16         **THE COURT:**  And I don't also know why I think

17   you're -- you're giving me, Mr. Winchester, some new things

18   that I wasn't aware of here.

19         **MR. WINCHESTER:**  Uh-huh.

20         **THE COURT:**  Right?

21         I'm certainly not trying to enter an order that would

22   violate, you know, the FAA and would spark an interlocutory

23   appeal of some kind.  And before we know, we got the 12th floor

24   involved.

25         **MR. WINCHESTER:**  Right.

1      **THE COURT:**  I mean, that's not what we're here for.

2      And you know you do that, and talk about delay.

3      **MR. WINCHESTER:**  Right.

4      **THE COURT:**  Right?  You want a delay?  Go up five

5  floors.  Because they're going to get to it when they're going

6  to get to it.  And that, you know, so, can you all talk and

7  I'll -- how long you think you need maybe?

8      **MR. WINCHESTER:**  Ten minutes.

9      **THE COURT:**  Will you talk for ten minutes?

10      **MR. KASPRZAK:**  You -- you probably -- we've been

11  talking for months, I mean --

12      **THE COURT:**  No.  No.  About the very specific --

13      **MR. KASPRZAK:**  Yes.

14      **THE COURT:**  -- thing that I'm talking about.

15      **MR. KASPRZAK:**  Right.

16      **THE COURT:**  The schedule.

17      I'm being very specific.

18      **MR. KASPRZAK:**  Sure.

19      **THE COURT:**  When can you be ready for a preliminary

20  injunction hearing?

21      **MR. WINCHESTER:**  Right.

22      **THE COURT:**  When.  What do you need to do before it.

23  And I am going to enter -- I am going to order that whatever

24  happens between now and the preliminary injunction hearing that

25  the plane be maintained in -- if status quo means they're, you

31

1   know, we need ladders on it, then I don't mean status quo.

2           **MR. WINCHESTER:**  Right.

3           **THE COURT:**  I mean maintaining the integrity of the

4   plane which -- with whatever --

5           **MR. WINCHESTER:**  Commercially appropriate.

6           **THE COURT:**  Yeah.  Whatever language you want to use.

7           **MR. WINCHESTER:**  Sure.

8           **THE COURT:**  You need to submit that to me like say by

9   the end of close of business tomorrow, so we can --

10          **MR. WINCHESTER:**  Right.

11          **THE COURT:**  -- ensure Mr. Cassels that his plane's

12  not being wrecked.

13          And then you can tell Mr. Cassels that the Judge is

14  very much wanting to entertain figuring out how to get the

15  plane to whomever should have the plane.  I mean, they own the

16  plane.

17          **MR. WINCHESTER:**  Right.

18          **THE COURT:**  And if you don't have a lien on it, I

19  don't understand why they can't have it back.

20          But you -- you're raising some issues that I'm not

21  ready to rule on.  That's -- that's it.  And the TRO isn't.  So

22  they have to show, right, that -- you get a TRO when the, you

23  know, 200-year-old chestnut tree is going to be chopped down.

24  We don't have that.  We just don't.

25          Okay.  So I'll be back in ten minutes from now.

32

1          MR. WINCHESTER:  Sure.

2          THE COURT:  Thanks.

3          MR. KASPRZAK:  Thank you, Judge.

4      **(Recess taken from 2:52 p.m. to 3:03 p.m.)**

5          THE COURT:  You guys ready?

6          MR. KASPRZAK:  I think we are, Judge.

7          MR. WINCHESTER:  I think we are, your Honor.

8          THE COURT:  Okay.  Be seated.

9          MR. WINCHESTER:  Sure.

10         MR. KASPARZAK:  Can we sit at the table across from

11    each other?

12         THE COURT:  Sure.  Whatever you think is appropriate.

13         Okay.  What did we -- what did we come up with?

14         MR. WINCHESTER:  Your Honor, I think -- I think the

15    path forward is, you know, they'll answer on behalf of

16    Mr. Cassels within a week from tomorrow.  So that'll be the --

17    April 21st, next Friday.

18         And then I think we need 60 days to conduct

19    discovery, depositions, request production, and so on.  So that

20    would put us in a preliminary injunction hearing, you know, at

21    some point during the week of June 19th.

22         THE COURT:  Look at that week, Jason.

23     **(Pause in the proceeding.)**

24         CASE MANAGER MARCHAND:  June 11th, Judge.

25         THE COURT:  June 11th, that week.

33

1          **MR. WINCHESTER:**  Okay.  The next week on there?

2          **THE COURT:**  What are we doing the next week?

3          **CASE MANAGER MARCHAND:**  The next week's open.

4          **THE COURT:**  So what day of the week works best for

5     you all that -- so it's the week of what?

6          **CASE MANAGER MARCHAND:**  June 26th?

7          **THE COURT:**  I mean, I prefer not to do it on Monday,

8     so that you -- if you --

9          **MR. WINCHESTER:**  Sure.

10          **MR. KASPRZAK:**  So -- so would we.  So would we.

11          **THE COURT:**  -- want to file some --

12          **MR. KASPRZAK:**  So would we.

13          **THE COURT:**  Yeah.  I mean, just like Tuesday?

14          **MR. KASPRZAK:**  Tuesday -- Tuesdays would probably be

15     optimal.

16          **THE COURT:**  Tuesday at ten?  Couple of hours at most,

17     right?

18          **MR. WINCHESTER:**  Sure.

19          **THE COURT:**  I mean, we're not doing the whole trial.

20          **MR. WINCHESTER:**  Right.

21          **THE COURT:**  This is all limited to why can't they

22     have their plane back.

23          **MR. WINCHESTER:**  Right.

24          **THE COURT:**  Right?

25          **MR. WINCHESTER:**  Absolutely.

34

1          THE COURT:  Okay.  So --

2          MR. KASPRZAK:  Yeah, I mean, we're talking about the

3   technical FAA kind of regulatory --

4          THE COURT:  That's --

5          MR. KASPRZAK:  -- issues.

6          THE COURT:  That's --

7          MR. KASPRZAK:  Cause we -- nobody's fleshed out yet.

8          THE COURT:  And -- and I want to make a comment that

9   this was resonating in my head.  So say -- say it again.  It's

10  June 27 --

11          CASE MANAGER MARCHAND:  Ten a.m.

12          THE COURT:  -- at 10?

13      **(Pause in the proceeding.)**

14          THE COURT:  What -- all right.  Continue then?

15          MR. WINCHESTER:  Oh, and then the last kind of piece

16  of -- of the path forward is, we would request that you order

17  us to mediate before that date, the June 27th date.

18          THE COURT:  You want to mediate?

19      **(Pause in the proceeding.)**

20          MR. KASPRZAK:  Personally, I think it might be

21  beneficial.

22          My client, when I suggested it, that's the second

23  time he threatened to fire me.

24          THE COURT:  Well --

25          MR. KASPRZAK:  And -- only -- only because -- not

1  because he doesn't want this to go away.  Only because from day

2  one he's been telling me you don't let them conflate all these

3  financial disputes with possession of my plane.

4          **THE COURT:**  And this person sitting right there --

5          **MR. KASPRZAK:**  And then he -- I see that --

6          **THE COURT:**  -- I am not --

7          **MR. KASPRZAK:**  Yes.

8          **THE COURT:**  I am not conflating it.

9          **MR. KASPRZAK:**  This is --

10          **THE COURT:**  I get it.

11          **MR. KASPRZAK:**  This will get us there.  That's what I

12  like about this, Judge.

13          **THE COURT:**  So, I will tell you.  I bet I could, but

14  I only do this if both sides agree.  And right now we don't

15  have both sides agreeing.  So you tell me later.

16          I may be able to, in this particular situation,

17  because it's -- it's interesting and unique.  I might be able

18  to convince one of my colleague magistrate judges to do it.

19  That's sometimes helpful, as opposed to having and go and pay a

20  mediator and --

21          **MR. KASPRZAK:**  Right.

22          **THE COURT:**  -- be on their schedule.  Might be able

23  to get somebody to do an expedited mediation and be able do a

24  little bit more of that early neutral evaluation-type thing, as

25  opposed to, you know, just the -- the trading numbers kind of

36

1    thing.

2         **MR. KASPRZAK:**  And -- and I agree.

3         **THE COURT:**  You tell me --

4         **MR. KASPRZAK:**  This -- this is a very unique

5    situation.

6         That would be very beneficial, I think.  I wouldn't

7    object to it either way.  I probably shouldn't have --

8         **THE COURT:**  Check -- talk to your --

9         **MR. KASPRZAK:**  -- told you what my client's --

10        **THE COURT:**  It's okay.  I'm -- I'm ignoring that.

11        **MR. KASPRZAK:**  -- previous position is.  Thank you.

12        **THE COURT:**  Talk to your client.  And if -- if you --

13   if you want me to inquire about whether one of my magistrate

14   judge colleagues will mediate this early, I will inquire.

15        **MR. WINCHESTER:**  Okay.

16        **THE COURT:**  That's the best I can do.

17        And they don't -- I mean, I have no authority to

18   tell --

19        **MR. WINCHESTER:**  Sure.

20        **THE COURT:**  -- anybody --

21        **MR. KASPRZAK:**  Right.

22        **THE COURT:**  -- on my same Article I level what to do

23   or when to do it.  And so, I can find that out.

24        But that's -- that's separate.  You'll -- you'll tell

25   me.

1        **MR. WINCHESTER:**  Okay.

2        **THE COURT:**  But let me -- let me ask this.

3        In terms of -- who -- who do you need to depose

4   actually?  Cause we're -- again -- and this is the comment that

5   I was going to make.  I'm going to put it here so that you can

6   answer me a little bit more cleanly.

7        If you have currently no property, or possessory, or

8   otherwise a lien on this plane, I get it that there might be

9   some paperwork that needs to be done.  But why can't you just

10  give it back?

11        And then you're -- they're into you for the cost of

12  the parts.

13        **MR. WINCHESTER:**  Right.

14        **THE COURT:**  You -- you know, that's what's going on

15  here, right?

16        **MR. KASPRZAK:**  And -- and the discovery that needs to

17  be taken is, and I realized this as we were talking, was I

18  don't have a witness that's going to take the stand and talk

19  about this.  We didn't even know about this till we walked in

20  here this afternoon.

21        We need to depose whoever it is on their side who's

22  going to explain to us what those hurdles are.

23        **THE COURT:**  Yeah.  Yeah.  So who does that?

24        **MR. KASPRZAK:**  And then maybe we need to hire a -- an

25  expert to -- to guide us through that, or respond to that, or

1   refute that.

2          **THE COURT:**  I -- I bet Mr. Cassels --

3          **MR. KASPRZAK:**  We'll do whatever we can within the

4   timeframe.

5          **THE COURT:**  A bet Mr. Cassels can do that for you,

6   but --

7          **MR. KASPRZAK:**  Yes.

8          **THE COURT:**  Do you have a person?

9          **MR. WINCHESTER:**  That -- that we would offer up to be

10  deposed?  I -- I can't tell you exactly who it is.  I imagine

11  it's either Alan (phonetic) Rahm (phonetic), who's the

12  President.  And then there's another individual that I -- I

13  can't remember his name off the top of my head.  He's like

14  Director of Flight Operations and Maintenance.

15         So it'd be one of those two guys.

16         **THE COURT:**  And -- okay.  That being said.

17         What -- what sort of documents need to exchange to

18  get us there?

19         **MR. WINCHESTER:**  I -- I don't -- I couldn't tell you

20  right now.

21         **THE COURT:**  Cause here's what I don't want to have

22  happen.

23         **MR. WINCHESTER:**  Uh-huh.

24         **THE COURT:**  Is to have you all doing requests for

25  production, and then objections, and all of that.

39

1          What I -- what I almost would rather do is have there

2     be a defined set of discovery that is simply going to be

3     exchanged, written discovery.

4          **MR. WINCHESTER:**  Sure.

5          **THE COURT:**  That you would just go ahead and

6     exchange.

7          Now --

8          **MR. KASPRZAK:**  Up front.

9          **THE COURT:**  -- with -- without all the -- without all

10    the back and forth, and the objections.

11         And so --

12         **MR. KASPRZAK:**  Are we talking about narrowly framed

13    discovery on this issue alone?

14         **THE COURT:**  For this -- for this issue.

15         **MR. KASPRZAK:**  Yes.

16         **THE COURT:**  This is the only issue that we have to

17    worry about.

18         We're going to do the accounting, and the damages,

19    and the breaches of contract, and claims for conversion, and

20    everything else on a normal timeline.

21         **MR. KASPRZAK:**  Right.

22         **THE COURT:**  The only thing that -- that this

23    preliminary injunction issue about is where does the plane

24    live.

25         And can they simply stand down and let your guy go

40

1   and fix the plane and take it back.

2          **MR. KASPRZAK:**  And if not, what needs to be done.

3          **THE COURT:**  Yeah.

4          **MR. KASPRZAK:**  Because these type of relationships

5   have got to transition every day.  Well, not every day.

6   Because once we -- I got into this, I realize that this is not

7   a very common thing.

8          **THE COURT:**  But okay.  I mean --

9          **MR. KASPRZAK:**  But -- but --

10         **THE COURT:**  -- whatever it is.  And it --

11         **MR. KASPRZAK:**  But leases like this begin and end.

12  And planes go from one party to another.  So there must be

13  something that -- that people recognize is to be done here.

14  And I -- I think --

15         **THE COURT:**  Which is part --

16         **MR. KASPRZAK:**  I think the discovery gets defined by

17  the universe of documents identified by his witness.

18         **THE COURT:**  Okay.  So here -- here's -- here's

19  what -- here's what we'll do then.

20         Your preliminary injunction hearing is set June 27th

21  at 10.  Okay.  And it will be live right here in this

22  courtroom.  Mr. Cassels will answer by the end of next week.

23  Right?

24         **MR. KASPRZAK:**  Yes.

25         **THE COURT:**  That's what you said.

41

1          **MR. KASPRZAK:**  We're -- we're doing that like we

2    said.

3          **THE COURT:**  Okay.  And it's your understanding that

4    he will stay with the jurisdiction of me?

5          **MR. KASPRZAK:**  Yes.

6          **THE COURT:**  Okay.

7          **MR. KASPRZAK:**  Yes.  We will add it to the consent.

8          **THE COURT:**  All right.  Then by close of business

9    tomorrow, I need for you all to submit an agreed proposed order

10   that maintains, you know, the physical and commercial integrity

11   of that plane, without making them continue to do upgraded

12   maintenance.

13         **MR. KASPRZAK:**  Yeah.  Yeah.

14         **THE COURT:**  We're not upgrading it.  We're not

15   painting it.  You know, this -- its current status needs to

16   be --

17         **MR. KASPRZAK:**  Protected from the elements.

18         **THE COURT:**  That's it.  Protected from the elements,

19   and from forklifts, and from all of the things that go inside

20   of airplane hangars.

21         **MR. KASPRZAK:**  May -- I -- I should have proposed

22   this while we were talking, Judge.  But I don't want to wait

23   until afterwards now.  So pardon me if I'm out of order.

24         But may we go up and -- and have somebody look at our

25   plane?  I don't even know if you would object to that, cause I

42

1    haven't asked you for it.

2              **MR. WINCHESTER:**  No.  And -- and that was one of the

3    points I would have made in my --

4              **THE COURT:**  Fine.

5              **MR. WINCHESTER:**  -- longer is in the leases.  It's

6    allowed that they can come in and look at it.

7              **THE COURT:**  Okay.

8              **MR. KASPRZAK:**  Yeah.

9              **THE COURT:**  So, in -- in this order that you'll

10   submit to me tomorrow, is -- is tomorrow enough time?  You can

11   do it close of business Monday.

12             **MR. WINCHESTER:**  Okay.

13             **MR. KASPRZAK:**  Yeah.

14             **THE COURT:**  Yeah.  Close of business Monday.

15             Give me an order that maintains the, you know,

16   integrity of the plane and permits an inspection upon some kind

17   of notice.  And I'm sure the contract says given, you know,

18   notice we can come in.  And it's not three in the morning,

19   right?

20             **MR. WINCHESTER:**  Right.

21             **THE COURT:**  In -- in compliance with the contract.

22             **MR. KASPRZAK:**  I -- I think it says during regular

23   business hours.

24             **THE COURT:**  Something like that, okay.

25             But just let him know where you're coming.

43

1          **MR. KASPRZAK:**  Sure.

2          **THE COURT:**  So that's by Monday.

3          By Friday of next week --

4          **MR. WINCHESTER:**  Uh-huh.

5          **THE COURT:**  **--** I want you to give me a proposed order

6    of the discovery that you not intend to conduct, but that you

7    will exchange.  I don't want to -- you're going to

8    categorically --

9          **MR. KASPRZAK:**  Sure.

10         **THE COURT:**  **--** say, we will hand over these ten types

11   of documents, or whatever it is, from both sides.

12         So nobody -- and I will sign it and say that's

13   ordered.  And the deposition of this or that person will be

14   conducted, you know, and if you have a schedule for the dates,

15   then tell me.  If not, it'll be on or before such and such a

16   date.

17         **MR. WINCHESTER:**  Right.

18         **THE COURT:**  Okay?

19         And then you need to -- we said the 27th was a

20   Tuesday, right?

21         **MR. KASPRZAK:**  Yes, sir.

22         **THE COURT:**  So, oh I actually have a calendar here,

23   so --

24      **(Pause in the proceeding.)**

25         **THE COURT:**  Since it's your motion, Mr. Kasprzak, you

44

1   need to file a brief on the issue of here's why I get my plane

2   back, based on what you've learned --

3           **MR. KASPRZAK:**  Certainly.

4           **THE COURT:**  -- by June 9th.  Okay?

5           And then you need to respond by June 16th.  And if

6   you want to reply, you can do that by June 23rd.

7           **MR. WINCHESTER:**  Yes.

8           **THE COURT:**  Cause that way I can have that weekend

9   and Monday to read things.

10          **MR. WINCHESTER:**  You said the 16th for us, right,

11  your Honor?

12          **THE COURT:**  Yep.  So 9, 16, 23, 7 days, 7 days, 7

13  days.

14          And it really does need to be limited to this issue.

15  And cite me some cases.  Cause I actually tried to find some

16  cases that were along these lines.

17          Most of the cases that I'm finding that allow

18  possession of some piece of chatteled property be taken pre-

19  judgment, it's in a case where there's a dispute about who owns

20  it.

21          **MR. WINCHESTER:**  Right.

22          **THE COURT:**  Right?

23          And I get it that you have made improvements on this

24  thing.  But I think that if I'm just guessing, that like when

25  you -- when you make an -- when you fix something, you know,

45

1   absent something like a state law mechanics lien --

2          **MR. WINCHESTER:** Uh-huh.

3          **THE COURT:** -- you know, title to that thing sort of

4   passes. Might be like a, you know, and then all that's left is

5   a breach of contract question. Right?

6          But in -- in Texas, I think you bring your car to the

7   mechanic, and they put in a new engine, you don't just get to

8   go and take the car and not pay.

9          **MR. WINCHESTER:** Right.

10         **THE COURT:** They have -- they have recourse. And --

11         That requires them to file something.

12         **MR. KASPRZAK:** It -- it -- it requires statutory

13  language to be included in the estimate for services.

14         **THE COURT:** Fair enough. And so --

15         **MR. KASPRZAK:** And intended is a contract --

16         **THE COURT:** We got to know what --

17         **MR. KASPRZAK:** -- between the parties that says we've

18  got lien rights. And if you don't pay, you don't get your --

19  you don't get your property back.

20         **THE COURT:** I hear you.

21         So you've got to dot the "I's" and cross the "T's"

22  for that to happen. If that's not happened, then, you know,

23  this becomes easy. And perhaps, we don't need this hearing.

24         **MR. WINCHESTER:** Right. Gotcha.

25         **THE COURT:** All right. And if you want to mediate,

46

1   let me know by the end of next week.

2           MR. KASPRZAK:  We'll -- we'll let you know.

3           I'm -- I'm going to press that, and encourage it to

4   be done.  And if we could get one of the other magistrates

5   to -- to do that as a -- I'm sure -- I'm sure they owe you a

6   favor, Judge.

7           THE COURT:  Just -- just -- just make sure that --

8           MR. KASPRZAK:  It'd be wonderful.

9           THE COURT:  -- if you're in front of the one down the

10  hall you say Magistrate Judge, because she'll chop your head

11  off --

12          MR. KASPRZAK:  Okay.

13          THE COURT:  -- if you don't put the Judge after that.

14  Cause that's her title.

15          It's -- and she would remind you that -- and I'll

16  help the -- the law students.  We lost half of them.

17          MR. WINCHESTER:  That is --

18          MR. KASPRZAK:  Yeah.

19          THE COURT:  Sorry.  That's -- we -- we're doing

20  business here.

21      **(Pause in the proceeding.)**

22          THE COURT:  It -- it -- it is in the federal system

23  no more appropriate to call a magistrate a magistrate than it

24  would be to call a magistrate judge a magistrate than it would

25  be to call a district judge, district.

47

1          MR. KASPRZAK:  Ah.

2          THE COURT:  Or an appellate judge --

3          MR. WINCHESETER:  Appellate.

4          MR. KASPRZAK:  Appellate.

5          THE COURT:  -- appellate.

6          MR. WINCHESTER:  Or circuit.

7          THE COURT:  Right?  Or circuit.  Hi, circuit.

8          MR. WINCHESTER:  Yeah.

9          MR. KASPRZAK:  Wow.

10          THE COURT:  It just -- it's -- they're all just

11 judge.

12          And so we have one that -- that reminds people of

13 that in writing.

14          MR. KASPRZAK:  We'll try not to be the recipient of

15 any of those letters.

16          THE COURT:  All right.

17          MR. KASPRZAK:  Thank you.

18          MR. WINCHESTER:  So on that, your Honor, I'll just

19 tell you right now, we -- we will mediate.  We will inform you

20 next week.

21          THE COURT:  Yes.

22          MR. WINCHESTER:  Our client is willing to mediate.

23          THE COURT:  Okay.  Okay.

24          MR. KASPRZAK:  Yeah.

25          MR. WINCHESTER:  Yeah.  I know he's the guy, you

1  know, he needs to talk to Mr. Cassels.

2          **THE COURT:**  That's fine.

3          **MR. KASPRZAK:**  Well, again, I just don't want you to

4  try to call in a favor and get it set up and then --

5          **THE COURT:**  No.  No.  I'm not doing it until you tell

6  me.

7          **MR. KASPRZAK:**  -- me -- we -- me trying to get -- try

8  to get out of it for some reason.

9          **THE COURT:**  Okay.  Any -- anything -- anything else?

10         And I am just going to put in this minute entry order

11 the Motion for Temporary Restraining order, this is for you,

12 Jason, is denied because the Plaintiff, at this stage of the

13 case, has not shown an irreparable injury.

14         The Court will reconsider the question at a --

15         **MR. KASPRZAK:**  At the preliminary injunction hearing.

16         **THE COURT:**  -- injunction.

17         Fair?  I mean --

18         **MR. WINCHESTER**  Good.

19         **THE COURT:**  I -- I just -- I don't want to have to

20 write a law review article on this.

21         **MR. KASPRZAK:**  Sure.

22         **THE COURT:**  I'll write something later, but --

23         **MR. WINCHESTER:**  Right.

24         **THE COURT:**  -- the rule does require me to write

25 something.

49

1          Anything else?

2          **MR. WINCHESTER:** That's it, your Honor.

3          **THE COURT:** Okay.

4          **MR. KASPRZAK:** Thanks for your all time today, your

5     Honor.

6          **THE COURT:** You -- you got it.

7          **MR. KASPRZAK:** Appreciate it.

8          **MR. WINCHESTER:** Thank you.

9          **THE COURT:** Any questions? We're off the record.

10         **(This proceeding was adjourned at 03:18 p.m.)**

11

12                          * * * * *

13

14                       CERTIFICATION

15

16         I certify that the foregoing is a correct transcript

17    from the electronic sound recording of the proceedings in the

18    above-entitled matter.

19

20    ____/s/*Cheryl L. Battaglia*_____    _____May 9, 2023_____

21         Transcriber                      Date

22    4:23-CV-0491

23    04/13/23 - 05/09/23